## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LEONEL NARANJO-ROSARIO,**

*Petitioner,*

v.

**UNITED STATES OF AMERICA,**

*Defendant.*

**CIVIL NO. 18-1882 (DRD)**
**(Criminal Case No. 12-616)**

**OPINION AND ORDER**

Pending before the Court is Petitioner, Leonel Naranjo-Rosario's *Pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (hereinafter, "Motion to Vacate"). *See* Docket No. 1.[1] The Government later filed the respective *Response in Opposition* thereto. *See* Docket No. 19. The Petitioner then filed a *Reply*. *See* Docket No. 24. Consequently, the Government filed its respective *Sur-Reply in Further Opposition* thereto. *See* Docket No. 27.

The Court notes that prior to filing the instant § 2255 Petitioner, Mr. Naranjo appealed his sentence before the First Circuit and the conviction and sentence of the United States District Court for the District of Puerto Rico were affirmed. *See* Docket No. 518. For the reasons stated herein, the Court **DENIES** the Petitioner's *Motion to Vacate* (Docket No. 1).

### I.   FACTUAL AND PROCEDURAL BACKGROUND

As stated in the *Criminal Complaint*, or on about June 2012, agents from Homeland Security Investigations (hereinafter, "HSI") received reliable information regarding a possible

---

[1] A Memorandum of Law in Support of § 2255 Petition was included. *See* Docket No. 4.

federal violation involving the importation, distribution, and possession with intent to distribute a controlled substance, in violation of 2 U.S.C. §§ 841, 843, 846, 952, 960, and 963; and laundering of the proceeds derived through the distribution of illegal narcotics in violation of 18 U.S.C. §§ 1956, 1957, and 1960. *See* Docket No. 1 in criminal case no. 12-616 (DRD). The indictment was a result of HSI's operation where an undercover agent initiated conversations with the conspirators to travel to the Dominican Republic to arrange a drug-smuggling venture into the island. *See* Docket No. 1-1 at 2, in criminal case no. 12-616 (DRD).

As part of the negotiations involving the purchase of kilograms of cocaine, the undercover agent agreed to provide the conspirators a blue Nissan Pathfinder vehicle to transport and deliver the drugs once in Puerto Rico. *Id*. at 3. The car was outfitted with a tracking device. *Id*. Along with his co-conspirators, the Petitioner stocked the cocaine into the Pathfinder, switching the cars for the narcotics transaction. HSI agents surveilled the Petitioner as he drove off in an Acura with one of the co-conspirators. *Id*. The agents later intercepted the Pathfinder and seized forty-five (45) kilograms of cocaine. *Id*. at 4. Later, using the electronic surveillance device attached to the Pathfinder, HSI agents identified the residential area located in Carolina, Puerto Rico, where the Petitioner was staying as a guest. *Id*. at 5. HSI agents then obtained and executed a search warrant of the residence. *Id*. Ultimately, the agents seized $118,950 and a loaded firearm with an obliterated serial number from the Petitioner's bedroom. *United States v. Naranjo-Rosario*, 871 F.3d 86, 91 (1st Cir. 2017).

As a result thereof, Petitioner was charged with a six-count indictment for two (2) conspiracy offenses (1) to possess with the intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841 (a)(1) and 841 (b)(1) (A)(ii) (hereinafter, "Count

One"); and (2) to import into Puerto Rico from the Dominican Republic five (5) kilograms or more

of cocaine in violation of 21 U.S.C §§ 952 and 963 (hereinafter, "Count Two"); possession with

intent to distribute five (5) kilograms or more in violation of 21 U.S.C. §§ 841 (a)(1) and 841

(b)(1)(A)(ii) (hereinafter, "Count Three"); importation of five (5) kilograms or more of cocaine in

violation 21 U.S.C. §§ 952 and 960 (hereinafter, "Count Four"); and two (2) possession of firearm

offenses (1) during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924

(c)(1)(A) (hereinafter, "Count Five"), and (2) possessions of firearms with an obliterated serial

number in violation of 18 U.S.C. § 922 (k) (hereinafter, "Count Six"). *See* Docket No. 24 in criminal

case no. 12-616 (DRD). The Petitioner went to trial, but he did not testify. *See* Docket No. 1 at 4.

However, during the eight day of trial, it was revealed for the first time that a drug-sniffing

dog was present throughout the security sweep.

> BY MR. ALVAREZ:
> Q. Sir, you were present during the search of the house, entire search, correct?
> A. Yes, during the time, yes.
> Q. And no drugs were found in that house, correct?
> A. No.
> Q. Did you take dogs to determine if there were drugs in the house?
> THE INTERPRETER: Took what?
> MR. ALVAREZ: Canines. If the agents took dogs. THE WITNESS: There was a canine unit.
> MR. ALVAREZ: Your Honor, may we approach?
> THE COURT: Yes.
> (WHEREUPON, proceedings were had at sidebar, outside of the hearing of the jury, to wit:)
> MR. ALVAREZ: In my motion requesting exculpatory evidence, I was specific as to canine. And the information provided by the prosecutor at the beginning of the trial was that no canine was taken to the house, and now in the testimony, it appears that there was a canine.
> MR. GONZALEZ: And because of the canine unit --
> MS. LONGO: It was never provided -- there was no report ever provided.
> MR. ALVAREZ: I know, but he has testified that there was a canine unit there. That's why I requested that, and we would --

> THE COURT: The answer is negative. The answer is negative. The exculpatory evidence just came out.
> MS. LONGO: There was no drugs found.
> THE COURT: So where is the beef?
> MR. ALVAREZ: I just want the report.
> MS. LONGO: There's no report. There's no report.
> THE COURT: Is there a report? Did you receive a report as to a canine unit?
> MS. LONGO: No, Your Honor. There was no report regarding the canine unit participation in the report.

*See Transcript of Day 8 of Jury Trial,* Docket No. 240 at 42-44, in criminal case no. 12-616 (DRD).Notwithstanding, in the course of the search, the canine gave notice on three (3) different occasions in the bedroom where the Petitioner was sleeping. The dog alerted to a five-gallon pail, a fanny pack, and a mattress. *See* Docket No. 305 at 29-30, in criminal case no. 12-616 (DRD). This incident is the basis of the facts surrounding this case and regarding the Petitioner's *Motion to Vacate*.

On October 7, 2014, the Jury rendered a guilty verdict on all six (6) counts, and the Petitioner was accordingly sentenced to 248 months of imprisonment. *See* Docket No. 423 in criminal case no. 12-616 (DRD). Thereinafter, the Petitioner filed an appeal before the First Circuit (Docket No. 427 in criminal case no. 12-616 (DRD)). On appeal, the Petitioner argued that the District Court erred in admitting the testimony of the handler of a narcotics-detecting dog, among other errors. *See* Docket No. 518 at 2, in criminal case no. 12-616 (DRD).[2] The First Circuit ultimately affirmed the District Court's determination and judgment. *Id.* at 23.

Petitioner essentially asserts in his *Memorandum of Law in Support of his Motion to Vacate* that he received ineffective assistance of counsel because his attorney did not procure a

---

[2] Petitioner also pointed out that the District Court erred in denying his motion for judgment of acquittal on three (3) counts of the indictment and calculating his sentence.

plea agreement immediately after the late disclosure of the canine sweep. (Docket No. 4). Furthermore, Mr. Naranjo claims that he "would have accepted a guilty plea instead of going to trial." *Id.* The Government filed a *Response in Opposition* thereto wherein it submits that Petitioner's claim lacks merit and should be denied.[3] The Petitioner then filed a *Reply* claiming that even the record shows that counsel admitted to providing an ineffective representation[4] and that the Court must grant an evidentiary hearing and request the Government to produce the original plea offer. *See* Docket No. 24 at 3-4. The Government filed a *Response in Further Opposition* thereto wherein they allege that Petitioner's claim should be dismissed with prejudice as he has not shown "good cause for discovery or justify an evidentiary hearing." *See* Docket No. 27.

For the reasons articulated below, the Court **DENIES** the Petitioner's *Motion to Vacate*. *See* Docket No. 1.

## II.    LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 2255, a federal prisoner may file a petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The prisoner is entitled to a prompt hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." However, "[r]elief under [§ 2255] is available only in extraordinary situations, such as an

---

[3] The Government also asserts that the Petitioner should not be allowed to accept the Government's initial five-year plea offer that he received and rejected before trial. *See* Docket No. 19.

[4] Petitioner further argues that "[n]o statement by [counsel] is included nor any motion she filed is cited where she made such allegation" referring to counsel's actions as part of her trial strategy. *See* Docket No. 24.

error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); *see Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994).

**A.    *Ineffective Assistance of Counsel Before the District Court***

The Petitioner claims that counsel admitted to being ineffective as she failed to obtain a plea agreement after a K9 narcotics smelling dog had gone through the residence where Mr. Naranjo was staying and had alerted on three (3) occasions for narcotics in the bedroom where Petitioner was sleeping. *See* Docket No. 4. Moreover, Petitioner also argues that "[h]ad this been known the case strategy would have changed completely." *Id.*  In support of this claim, Petitioner attached a sworn statement under penalty of perjury in Spanish asserting that he would have accepted a plea instead of going to trial. *See* Docket No. 4-1. The Court finds these statements insufficient, and further explains. To prevail on such a claim, the Petitioner holds the heavy burden of proving that his allegations meet and satisfy the *Strickland* standard. *See Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, Petitioner must prove that (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington,* 466, U.S. 668b (1984)); *see Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996); *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994); *Lema*, 987 F.2d at 51; *López-Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990) (citing *Strickland*, 466 U.S. at 687).

### 1) Strickland Test

The first prong of *Strickland* is satisfied when the Petitioner proves that counsel's performance fell under an objective standard of reasonableness. The mere fact that counsel did not procure a plea agreement and admitted ineffectiveness during trial and in the appellate brief does not show that counsel's performance was deficient. Thus, Petitioner's argument lacks the *Strickland* standard required objectivity. Such subjective interpretation of counsel fails to be an objective standard. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

However, it has been recognized that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In examining whether the Petitioner's representation was below the objective standard of reasonableness Courts should always make a determination as to whether Petitioner received from counsel the constitutional right to an adequate representation. "In all criminal prosecutions, the accused shall enjoy the [right] [. . .] to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend VI. It is also well recognized that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 48 U.S. at 690-91. In any ineffectiveness assistance of

counsel case, a particular decision "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. at 691.

Petitioner could prevail in his claim should he prove that counsel's action was "so patently unreasonable that no competent attorney would have made it." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006). In the case at bar, as part of the defense strategy, counsel filed a *Motion for Mistrial* after learning of the incriminating evidence regarding the Petitioner. *See* Docket No. 255 in criminal case no. 12-616 (DRD). Counsel requested her motion based on the following arguments:

a. There was no disclosure prior to trial of any evidence regarding a canine unit used.
b. The government during the discussions held before the court did represent there were no positive markings by the dog and would not present any evidence regarding the canine sweep. This in an attempt to justify the fact, at that time, the defense had not been disclosed with the fact of a negative canine sweep and therefore there was no prejudice.
c. The representations of the government were incorrect and misleading to counsel and the court.
d. The representations of the government adversely affected the due process of the case and the defendant can not have a fair trial.
e. Had the government provided the evidence in discovery the defense would have prepared a different theory of defense and would not I have inquired into this area.
f. Further, the advise of counsel of whether defendant Naranjo Rosado could proceed to trial or not would have been different when discussing the evidence designated and effect of this particular evidence which directly affects Naranjo Rosado.

Additionally, from the *Oral Argument* in the Appeal can be confirmed that the *Motion for Mistrial* "was asked for" a part of a strategic choice "[w]hen asked by the appeals court whether she had filed a motion with the district court to change the defendant's plea and to attempt to

reinstate the government's pre-trial offer" as stated in Docket No. 19 at 6.[5] Thus, Petitioner failed to meet the first *Strickland* prong as counsel fulfilled her duty to make a reasonable decision that any other competent defense lawyer in her position would have made.

As mentioned before, in order to satisfy the second prong of the *Strickland* test after a plea of not guilty, the Petitioner must "show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). *See also Scarpa v. Dubois*, 38 F.3d 1, 15-16 (1st Cir. 1994) requiring a convicted petitioner to establish prejudice to prove that if it weren't for counsel's error, there is a reasonable probability that the trial outcome would differ.  The Court recognizes that failure to satisfy either one of the *Strickland* prongs of deficiency and prejudice is "fatal" and, therefore, a court is free to tackle either prong first. *United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013). To prevail in his claim, Petitioner needs to demonstrate how the alleged deficient performance of counsel prejudiced the defense. There is an absence from the record of valid evidence to show that the Petitioner would have entered a guilty plea had counsel negotiated a plea at that time. The only reference in support of this claim is a sworn statement made by Petitioner under penalty of perjury in Spanish. *See* Docket No. 4-1. However, the Court cannot entertain this affidavit on its merits as it did not comply with 46 U.S.C. § 864 that requires all pleading and proceeding before the district court be conducted in English. Moreover, the Court held that Petitioner had until before the trial to plead "[m]onths, if not years, to plead, without that knowledge." *See* Docket No. 264 at 96, in criminal case no. 12-616 (DRD).  The Court finds

---

[5] Oral Argument at 03:42-04:15, *United States v. Naranjo-Rosario*, 871 F.3d 86 (1st Cir. 2017) (No. 14-2140) http://media.ca1.uscourts.gov/files/audio/14-2140.mp3

that Petitioner's arguments are unpersuasive and further believes he failed to comply with the Strickland test.

### B. Petitioner's Claim of Error in Admitting the Dog Handler's Testimony

Herein, Petitioner argues on appeal that the district court erred in permitting the testimony of the dog handler. As stated initially, both parties learned during trial that a canine was present during the execution of the search warrant in the Petitioner's bedroom. As soon as the dog handler's existence came to surface and the Government showed interest in hearing his testimony, counsel filed a *Motion requesting Exclusion of Potential Testimony of Dog Handler, Daubert/Kumho Tire Hearing and Permission to Appoint Expert*. *See* Docket No. 266 in criminal case no. 12-616 (DRD). In the motion, counsel asked the Court to (1) exclude agent Dominguez's testimony from this trial; or (2) alternatively, to continue the trial until a Daubert/Kumho Tire hearing can be held, while granting defendant a reasonable amount of time to prepare for such hearing, and (3) that it grants defendant permission to appoint an expert in handling and training of narcotic smelling dogs. *Id*. Ultimately, the Court decided to hear the proposed testimony, provided both parties more time to prepare, and conceded Petitioner to his own expert. *See* Docket. No. 279 in criminal case no. 12-616 (DRD).  It is important to note that the dog handler's testimony was allowed because Petitioner raised doubts that the canine did not mark:

> THE COURT: Fine. The issue is not whether he's a
> lay expert or he is a nonlay expert. That is a 702 versus a 701 witness.
> <u>The issue was that the Court was informed that the dog never marked anywhere,
> and the Court, based on the argument of the defense, stated that the Court
> thought that if a witness is going to testify that a dog did not mark in a premises
> where they were -- where this may have been drugs, or where there may have
> been money</u>, that that the Court interpreted to be an obligation of the United
> States to provide that as exculpatory evidence, right?
> MS. LONGO: That's correct, Your Honor.

THE COURT: Okay. So what happened was that you originally stated to the Court that the dog did not mark.

MS. LONGO: Well, Your Honor, the record reflects that what we stated to the Court is that we did not have any records of what happened with the canine search. As we are reading to you from the transcript of February 4, 2014, page 47, lines 18 through 23 --

MR. GONZALEZ: What date?

MS. LONGO: February 4, 2014. What we indicated is that there were no reports regarding the participation, and that we were willing to bring the witnesses, including the handler, to testify, and that that person could be cross-examined. And that was exactly what was done. The handler was provided -- was brought, was interviewed by the defense, which is a lay witness where they have no -- there's no Rule 16 obligation that they be provided with that statement, that they be afforded an opportunity to interview a government witness prior to the presentation of the evidence, which in this case they have done, and the witness is ready to testify as to the results of the canine sweep. And that testimony is what the government intends to present.

MR. GONZALEZ: But that's not what they said for the record, Your Honor. They stood up and said that the dog did not mark -- Your Honor, if it --

THE COURT: I know. I recall that they said it at one point or another. But the fact is that --

MS. LONGO: Your Honor --

MR. ZAMBRANA: Your Honor, excuse me. I'm sorry.

THE COURT: Can I finish? Thank you.

The fact is that I was making a ruling based upon wrong information. Because I made the ruling thinking that that's what the defense wanted at that time. But the fact is that the dog did mark. So if the dog did mark, then what is the obligation of the United States? None, right?[6]

Petitioner later questioned the testimony of the dog handler and cataloged it as expert testimony under Rule 702 of the Federal Rules of Evidence which provides that,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[6] *See Transcript of Day 12 of Jury Trial,* Docket No. 264 at 93-94, in criminal case no. 12-616 (DRD) (Emphasis ours).

He then argued that it should be excluded in compliance with the prior disclosure of expert testimony requirement of Rule 16 of the Federal Rules of Criminal Procedure.[7] The Circuit Court found that although "Agent Dominguez gave expert testimony in part and the trial court erred in finding that the dog handler was not an expert under Rule 702" the district court did not abuse its discretion.[8] As a result, the Petitioner "was not prejudiced by any error in admitting any part of that testimony, his appeal on this ground is rejected."[9] The First Circuit held:

> Not only was there no abuse of discretion, critically Mr. Naranjo was not prejudiced by the error in this regard. While the district court did err in allowing the testimony, the government presented other, compelling evidence that Mr. Naranjo was involved in the conspiracy and constructively possessed the gun in furtherance of the conspiracy. The multiple safeguards the district court built in to ensure that Mr. Naranjo was not prejudiced, combined with the very strong evidence of Mr. Naranjo's guilt, rendered any such error harmless.

*United States v. Naranjo-Rosario*, 871 F.3d 86, 97 (1st Cir. 2017).

Furthermore, counsel provided adequate representation by bringing in an expert to lessen the impact of the evidence. In support of this statement, the First Circuit held that the Petitioner "<u>was provided with the opportunity at trial to counter this indicia of reliability when his own expert presented evidence that positive alert by a drug-sniffing dog does not necessarily establish the possession of drugs.</u>" *Id*. (Emphasis ours).

### C. Discovery Claim

Through this § 2255 Petition, Petitioner has insisted and requested that he should be allowed to "accept the Government's initial 5-year offer." *See* Docket No. 4 at 4.[10] Even though a

---

[7] Rule 16 states that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

[8] *United States v. Naranjo-Rosario*, 871 F.3d 86, 97 (1st Cir. 2017).

[9] *Id.*

[10] *See* also Docket No. 24 at 3-4.

defendant has a well-recognized right to effective counsel representation in crucial plea negotiations,[11] such right is not protected by the Constitution. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Therefore, since there is no constitutional right to a plea bargain, the government has no obligation to maintain a plea offer after it has been refused by the Petitioner. Furthermore, even counsel recognized that "a defendant has no right to be offered a plea when a plea is offered and rejected." *See* Docket No. 24 at 2. According to Rule 6 of the Rules Governing Section 2255 Cases, the Petitioner has to provide reasons for the discovery request and must specify any requesting documents. In the present case, Petitioner requested a copy of the plea offer from the Government and was remitted to contact AUSA Hector Ramirez through a formal request for archived documents. *See* Docket No. 24 at 3. In support of this statement, Petitioner's attorney presented an email exhibit of his request stating that he needed a copy of the plea for a 2255 Petition. The Court finds that there is not enough specificity to warrant the relief sought. As previously stated, the Government does not have to maintain a plea offer indefinitely as "there is no constitutional right to plea bargain." *Weatherford*, 429 U.S. at 561, 97 S.Ct. at 846. Accordingly, Petitioner's allegation is meritless and hereby **DENIED**.

### D. Evidentiary Hearing Claim

A section 2255 Petitioner is not entitled to an evidentiary hearing as a matter of right. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Even if a hearing is requested,

---

[11] *See Missouri v. Frye*, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992); *United States v. Tajeddini*, 945 F.2d 458, 468-69 (1st Cir. 1991) (abrogated on other grounds by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)); cf. *Panzardi-Álvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989); *López-Torres v. United States*, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by *Bonneau v. United States*, 961 F.2d 17 (1st Cir. 1992)).

a district court properly may forgo it when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible. *Id.* at 225–26; *David v. United States*, 134 F.3d 470, 477–78 (1st Cir. 1998). Consequently, the Court deems unnecessary to hold an Evidentiary Hearing as Petitioner's request insufficient to establish the necessary burden of such meeting and his allegations are not supported by the record. The ultimate result would have remained unaltered. More importantly, there is a presumption that the legal representation of counsel was reasonable and effective. Thus, the Petitioner's request for an evidentiary hearing is hereby **DENIED**.

### III.      CONCLUSION

For the reasons elucidated above, the Court determines that Petitioner's *Motion to Vacate* (Docket No. 1) is hereby **DENIED**. Judgment of dismissal is to be entered accordingly.

It is further ordered that no certificate of appealability be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of May, 2021.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
U.S. District Judge